UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| PATRICIA CONLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:13-CV-141 JD |
| | ) | |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This is an insurance coverage dispute between Defendant State Farm Fire and Casualty Company ("State Farm") and Plaintiff Patricia Conley. Ms. Conley and her husband purchased a personal umbrella policy through State Farm in 2008. Two years later, she was in a serious car accident for which the other driver was found to be totally at fault. When her medical and other expenses exceeded those available under the at-fault driver's underlying policy, she sought to recover under the uninsured/underinsured ("UIM") portion of her umbrella policy. State Farm determined that Ms. Conley declined UIM coverage at the time she applied for the umbrella policy and did not pay Ms. Conley under the policy.

Ms. Conley responded by bringing this suit. She seeks a determination that the umbrella policy provided UIM coverage and additionally claims that State Farm breached its duty of good faith. [DE 1.] State Farm has moved for summary judgment on each of Ms. Conley's claims. [DE 26.] The motion is fully briefed and ripe for decision. For the reasons stated below, the Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.

## I. Facts

By 2008, Ms. Conley had been a long-term insured of State Farm. In March of that year, she approached her State Farm agent, Ryan Morris (an employee of A.D. Harris, State Farm Insurance), about obtaining a personal umbrella policy.

The parties disagree about nearly every aspect of the process through which Ms. Conley obtained her umbrella policy. Ms. Conley testified at deposition that her application was initiated through a short conversation with Sharon Hensley (another employee of A.D. Harris) in which she told Ms. Hensley she wanted a $1,000,000 umbrella policy. Mr. Morris returned Ms. Conley's call and told her "he'd take care of it and [she] could sign the application the next time [she] was in the office." [DE 36-1 at 7.] Ms. Conley stated that Mr. Morris did not discuss the availability of UIM coverage or ask any questions of her regarding her desire to obtain such coverage as part of the umbrella policy. [*Id.* at 7–8.] Mr. Morris claims to have explained the coverages available under the umbrella policy, including UIM coverage. [*Id.* at 18.] He testified at deposition that Ms. Conley orally indicated a desire to reject UIM coverage in the umbrella policy, but he could not recall the exact conversation in which that happened. [*Id.* at 17–18.] Ms. Conley denies making any statement indicating a desire to reject UIM coverage. The parties agree that Ms. Conley intended to complete the application the next time she visited the A.D. Harris office, where she regularly paid her premiums in person.

Ms. Conley completed the application in March 2008. Her account is that both Ms. Hensley and Mr. Morris were present when she arrived at the office. She entered Mr. Morris's office, after which he handed her an application and told her "You have to sign this." [DE 36-1 at 8.] Ms. Conley did sign the application, without reading it or having any discussion regarding the provision of UIM coverage, and handed Mr. Morris a money order to pay the policy premium.

[*Id.*] She testified that there was no further conversation at that time and that Mr. Morris did not say anything about UIM coverage under the umbrella policy. [*Id.*] Mr. Morris denies being present at the office when Ms. Conley completed the application. [*Id.* at 17.] He claims that Ms. Hensley was the only person present at the office when Ms. Conley completed the application. [*Id.*] Ms. Hensley also testified at deposition that she alone was present when Ms. Conley completed the application and denied having had any conversation regarding UIM coverage at the time the application was completed. [*Id.* at 21–22.]

The bottom of the application for the umbrella policy contained the following language:

### ACKNOWLEDGMENT OF COVERAGE REJECTION

### Personal Liability Umbrella Policy
### Indiana Uninsured/Underinsured Motor Vehicle Coverage

Indiana law requires that an insurer shall make available in each automobile or motor vehicle liability policy coverage for the protection of persons insured who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness or disease, including death.

The term "uninsured motor vehicle" means a motor vehicle without liability insurance, a motor vehicle not in compliance with financial responsibility requirements, or a motor vehicle where the liability insurer in unable to make payment because of insolvency.

The term "underinsured motor vehicle" includes an insured motor vehicle where the limits of coverage available for payment under all bodily injury liability policies are less than the limits for your underinsured motorist coverage.

Any named insured has the right to reject Uninsured/Underinsured Motor Vehicle Coverage on behalf of all insureds.

**Choose one:**
□ I reject Uninsured/Underinsured Motor Vehicle Coverage on all vehicles; or
□ I reject Uninsured/Underinsured Motor Vehicle Coverage on recreational vehicles only.

> **I understand the available limits and the cost of Uninsured/Underinsured Motor Vehicle Coverage and agree that this acknowledgement of rejection will apply to this policy, all future renewals of this policy, and all replacement policies.**
>
> Applicant's Signature _____

[DE 30-2 at 3.]

The application—as submitted to State Farm—contained Ms. Conley's signature at the bottom of the Acknowledgement of Coverage Rejection, as well as an "x" in the box next to "I reject Uninsured/Underinsured Motor Vehicle Coverage on all vehicles." [DE 30-1 at 2.] Ms. Conley admits that she signed the bottom of the Acknowledgement of Coverage Rejection. [DE 30-7 at 8, 10.] She denies having put an "x" in the box next to the UIM rejection and does not know whether the "x" was present when she signed the application. [*Id.* at 10.]

State Farm accepted Ms. Conley's application and underwrote the umbrella policy. In exchange for the payment of premiums, the Conleys received personal liability coverage in the amount of $1,000,000. [DE 30-3 at 3.] The policy covered "damages because of a loss for which the insured is legally liable," subject to the coverage limits and a set of exclusions, none of which appear applicable to this case. [*Id.* at 12–15.]

Ms. Conley received a written declarations page and policy in the mail a short time after completing the application. Ms. Conley did not review either document. [DE 30-7 at 10.] The declarations page did not state any UIM coverage, nor did it include a UIM endorsement. [*Id.* at 14.] All subsequent renewal certificates also omitted any reference to UIM coverage. [*Id.* at 16–25.]

On October 17, 2010, Ms. Conley was in a serious car accident. She sustained injuries, which required surgeries to her cervical and lumbar spine. State Farm also insured Casey

Hardesty, the driver who was determined to be at fault in the accident. State Farm settled with Ms. Conley at the policy limit on Mr. Hardesty's policy. The release stated "This is a not a release of any claims that Patricia and Jerry Conley may have under their own PLUP policy." [DE 36-1 at 32.]

Ms. Conley alleges certain facts regarding her interactions with State Farm and its employees following the accident. Included among those interactions were four separate occasions in which she interacted with Ms. Hensley, who made statements to the effect that Ms. Conley had coverage for her injuries under the umbrella policy.

In May 2012, Ms. Conley settled with State Farm as to the coverage under the policy of the at-fault driver. In November 2012, Ms. Conley's attorney sent a demand to State Farm for payment under the umbrella policy. In December 2012, State Farm responded that the umbrella policy did not include UIM coverage, due to Ms. Conley's rejection of such coverage in writing at the time she applied for the policy. This suit followed.

## II. Standard of Review

On summary judgment, the burden is on the moving party to demonstrate that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That means that the Court must construe all facts in the light most favorable to the nonmoving party, making every legitimate inference and resolving every doubt in its favor. *Keri v. Bd. of Trs. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any such material fact, and summary judgment is therefore inappropriate, when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* On the other hand, where a

factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party, as well as draw all reasonable and justifiable inferences in his favor. *King v. Preferred Technical Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). However, the non-moving party cannot simply rest on the allegations or denials contained in its pleadings, but must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th Cir. 2000).

Sitting in diversity, the Court will rely on the substantive law of Indiana and attempt to predict how the Indiana Supreme Court would decide the issues presented here. *See Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999) ("Where the state supreme court has not ruled on an issue, decisions of the state appellate courts control, unless there are persuasive indications that the state supreme court would decide the issue differently.").

### III. Discussion

With respect to coverage under the policy, Ms. Conley raises two arguments: first, that the policy provides UIM coverage because she did not reject it in writing, as required by Indiana law; and second, that even if she did reject UIM coverage in writing, coverage should be found to exist through either waiver or estoppel. Both of those arguments are addressed, in turn, below. After that, the Court considers Ms. Conley's bad faith claim.

6

## A. Material Facts Remain in Dispute Regarding Whether the Policy Provides UIM Coverage

The Indiana legislature has mandated that UIM coverage be provided "in each automobile policy or motor vehicle liability policy." *United Nat'l Ins. Co. v. DePrizio*, 705 N.E.2d 455, 458 (Ind. 1999) (quoting Ind. Code § 27-7-5-2(a)). Section 27-7-5-2 is "a mandatory coverage, full-recovery, remedial statute" whose "provisions are to be considered a part of every automobile liability policy the same as if written therein." *Id.* at 460 (quoting *Ind. Ins. Co. v. Noble*, 265 N.E.2d 419, 425 (Ind. Ct. App. 1970) (internal quotations omitted). The statute is to be liberally construed and, like all statutes relating to insurance, read in a light most favorable to the insured. *Id.* at 459–60. "Moreover, '[e]ven where a given policy fails to provide such uninsured motorist coverage, the insured is entitled to its benefits unless expressly waived in the manner provided by law.'" *Id.* (quoting *Noble*, 265 N.E.2d at 425).

In order to reject UIM coverage under the statute, the rejection must be voluntary and in writing. *State Farm Mut. Auto. Ins. Co. v. Stuery*, 787 N.E.2d 465, 472 (Ind. Ct. App. 2003). This means that the insured "must affirmatively indicate in writing, rather than by spoken communication, that it is his or her choice to not accept [UIM] coverage." *Marshall v. Universal Underwriters Ins. Co.*, 673 N.E.2d 513, 516 (Ind. Ct. App. 1996) (disapproved on other grounds by *DePrizio*, 705 N.E.2d at 461). The rejection does not need to use any "specific, magic words." *Id.* at 517. The goal when interpreting an insurance policy is "to determine and enforce the parties' intent as manifested in the insurance contract." *Id.* (quoting *Am. Family Mut. Ins. Co. v. Nat'l Ins. Ass'n*, 577 N.E.2d 969, 971 (Ind. Ct. App. 1991). Where a purported written rejection of UIM coverage is ambiguous, it is to be construed in favor of UIM coverage. *See Liberty Mut.*

7

*Fire Ins. Co. v. Beatty*, 870 N.E.2d 546, 551 (Ind. Ct. App. 2007) (construing ambiguous UIM rejection against insurer and affirming summary judgment in favor of insured).

Here, there is a written rejection of UIM coverage in Ms. Conley's application. There is no dispute that Ms. Conley in fact signed the portion of the application that stated, in bold "**ACKNOWLEDGEMENT OF COVERAGE REJECTION**." She disputes that she understood what she was signing or whether it was explained to her by State Farm, but she had a duty to read the application before she signed it. *See Safe Auto Ins. Co. v. Enter. Leasing Co. of Indianapolis, Inc.*, 889 N.E.2d 392, 397 (Ind. Ct. App. 2008) ("insureds have a duty to read and to know the contents of their insurance policies"). Because she does not allege that State Farm or any of its agents made any affirmative misrepresentations about whether the policy provided UIM coverage, she is not excused from that duty to read the policy. *Filip v. Block*, 879 N.E.2d 1076, 1084 (Ind. 2008) ("reasonable reliance upon an agent's representations can override an insured's duty to read the policy" if the "agent insists that a particular hazard will be covered").

Ms. Conley argues that the "application is far from clear that an applicant's signature is required only if the applicant is rejecting UIM coverage in some form." [DE 36 at 13.] However, the Court rejects this argument. The application is not complicated. It consists of two pages, only the first on which appears applicable to Ms. Conley's application. On that page, the UIM rejection is far from hidden; it covers almost a quarter of the page and is highlighted in several places in bold text. Given the clear purpose and language of the rejection which Ms. Conley signed—and in light of her duty to read the application before she signed it—the Court cannot determine that her intent in signing the application was anything other than to reject UIM coverage.

But the Acknowledgement of Coverage Rejection contained more than just a signature line. It gave Ms. Conley two check boxes, which allowed her to select between two different scopes of her UIM rejection: the first check box would reject UIM coverage on all vehicles and the second would reject UIM coverage only as to recreational vehicles. As described more fully in the Court's earlier factual description, there is a significant and fundamental dispute regarding whether or not Ms. Conley checked the box rejecting UIM coverage on all vehicles.

State Farm acknowledges this dispute, but argues that whether or not Ms. Conley placed an "x" in the box rejecting coverage as to all vehicles is not material. In essence, State Farm argues (without citation to any authority or identification of any factually analogous cases) that Ms. Conley did not have any recreational vehicles, so "the only election that could have been made, if the coverage was to be rejected, was to reject the coverage on all vehicles." [DE 27 at 9; *see also* DE 38 at 6.]

State Farm's argument that Ms. Conley's lack of recreational vehicles would have compelled her to check the box rejecting all coverage may persuade a jury, but the Court cannot accept such an argument at summary judgment. Giving Ms. Conley the benefit of all reasonable inferences, it is possible that she could have checked the box waiving UIM coverage on recreational vehicles only, despite the fact that she didn't have any such vehicles. [DE 36 at 13 ("if whoever put the 'x' on the application had placed the 'x' in the other box [regarding recreational vehicles], Conley would have had coverage for the subject accident").] Certainly nothing in the language of the application states that the recreational vehicle box is limited to those applicants who owned recreational vehicles. And if Ms. Conley had rejected UIM coverage on recreational vehicles only, coverage would have been provided in the policy and cover the injuries she sustained in the accident. This ambiguity as to the scope of the rejection, which is

9

assumed solely for the purposes of resolving the summary judgment motion, would be read in favor of the insured and the provision of coverage. *See Beatty*, 870 N.E.2d at 551.

Because whether she checked the box rejecting coverage is legally relevant to the scope of any UIM rejection, the Court finds the fact to be a material one. Because that material fact is in genuine dispute, summary judgment is not proper as to the question of whether the policy provides UIM coverage.

**B.     Ms. Conley Has Not Provided Sufficient Facts to Allow a Reasonable Jury to Find Estoppel**

In the alternative, Ms. Conley argues that even if coverage is not provided under the terms of the policy, State Farm has either waived any right it had to deny coverage or is estopped from denying coverage. [DE 36 at 19–20.] Waiver and estoppel, although technically distinct, are generally treated as interchangeable in the insurance context under Indiana law. *Ashby v. Bar Plan Mut. Ins. Co.*, 949 N.E.2d 307, 313 (Ind. 2011).

As Ms. Conley recognizes in her brief, Indiana adheres "to the general rule that the doctrines of estoppel and implied waiver are not available to create or extend the scope of coverage of an insurance contract." *Transcont'l Ins. Co. v J.L. Manta, Inc.*, 714 N.E.2d 1277, 1280–81 (Ind. Ct. App. 1999). The only way the question of estoppel would be reached in this case is if the jury rejects coverage under the policy, making this limitation applicable to Ms. Conley's claim.

Indiana recognizes two exceptions to the rule that coverage cannot be created by estoppel: first, where "an insurer misrepresents the extent of coverage to an insured, thereby inducing the insured to purchase coverage which does not in fact cover the disputed risk" and, second, where "an insured defends an action on behalf of an insured, with knowledge that would

10

provide a defense to coverage, but without a reservation of rights." *Id.* at 1281. The second exception is not at issue in this suit.

As to the first exception, Ms. Conley raises two arguments as to why it should apply in this case. First, she argues that when she communicated to the A.D. Harris personnel of her desire to obtain the umbrella policy, she made it clear that she wanted coverage for "any situation." However, such a general statement is not sufficient to invoke the exception, and Ms. Conley does not offer any evidence that any State Farm agent specifically represented that the policy would cover the hazard of uninsured or underinsured motorists. *Barnes v. McCarthy*, 893 N.E.2d 325, 329 (Ind. Ct. App. 2008) (finding agent's representations not sufficient to justify estoppel, where insured requested "full coverage" but made no particular inquiry of coverage for third party drivers and agent made no specific representation regarding the coverage of that particular hazard).

Second, Ms. Conley argues certain post-accident conduct on the part of State Farm and its agents justifies a finding of estoppel. Specifically, Ms. Conley alleges that Ms. Hensley made the following statements after the car accident: "Don't worry about it, you're covered" [DE 36-1 at 9]; "I told you not to worry about that. You've got coverage, just concentrate on getting -- getting well" [*id.*]; "You've got the coverage. You've got your umbrella policy here" [*id.*]; and "You've got a million dollars" [*id.*].[1] While Ms. Hensley denies having made these statements, the Court assumes for the purposes of this analysis that they were made. But even if they were made, statements made after the accident cannot operate to expand the scope of coverage under

---

[1] She also alleges that certain correspondence from State Farm claim personnel "mislead Conley into believing that she in fact had UIM coverage available." [DE 36 at 20.] However, the Court has reviewed that correspondence and it says nothing about whether coverage is available under the umbrella policy. Rather, the purpose of that correspondence was to make clear that settlement of the claim against State Farm under Mr. Hardesty's policy did not affect Ms. Conley's separate ability to make a claim under the umbrella policy, if it did in fact provide coverage for her injuries.

the policy. *See Farber v. Great Am. Ins. Co.*, 406 F.2d 1228, 1233 (7th Cir. 1969) (rejecting attempt to extend coverage of insurance contract under Indiana law where "there was no evidence of [the agent] making any representation before the accident took place, but only afterwards.").

Ms. Conley has put forward no facts that would allow a reasonable jury to find for her on the question of estoppel. Accordingly, partial summary judgment is granted on that point and Ms. Conley will not be allowed to argue to the jury that coverage should be granted on a theory of waiver or estoppel.

**C.  Material Facts Remain in Dispute Regarding Whether State Farm Acted in Bad Faith**

Next, the Court turns to Ms. Conley's claim that State Farm breached its duty of good faith. While Indiana recognizes a cause of action in tort for a breach of that duty, the "cause of action will not arise every time an insurance claim in denied." *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002). "The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993). "As a general proposition, '[a] finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Monroe Gaur. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977 (Ind. 2005). In order to prove bad faith, Ms. Conley "must establish, with clear and convincing evidence, that [State Farm] had knowledge that there was no legitimate basis for denying liability." *Id.*

Ms. Conley identifies three actions by State Farm that she claims constituted bad faith. [DE 36 at 15–16.] First, she argues that correspondence from State Farm and the statements by Ms. Hensley were misleading regarding whether the umbrella policy provided UIM coverage. Second, she argues that State Farm unnecessarily delayed notifying her of its determination that there was no UIM coverage under the policy. Finally, she argues that if she did not put the "x" in the check box next to the rejection of UIM coverage, then someone else had to have done so; the evidence, she elaborates, is consistent with someone at State Farm placing the "x" after she had signed the application.

The Court focuses on Ms. Conley's last assertion and finds the evidence sufficient to allow her bad faith claim to survive summary judgment. As the non-movant, Ms. Conley is entitled to the reasonable inference that the "x" next to the rejection of UIM coverage was neither placed by her nor present on the application at the time it was completed. In response to that argument, State Farm argues—as it did with respect to the question of coverage under the policy—that when the "x" was placed on the application is not material, since it merely defines the scope of the rejection. For the same reasons as stated above, the Court does find the circumstances under which the box was checked to be material in determining the scope of any UIM coverage that may have existed under the policy.

State Farm does not contest that if it materially changed the policy application after its submission by Ms. Conley (such as by placing an "x" that was not present when Ms. Conley completed the application), such actions would constitute bad faith. In fact, neither party has cited any cases addressing this scenario and the Court has not located any in its own research. So, in light of the current arguments, the Court finds that such an action could prove "dishonest

intent" sufficient to support a claim of bad faith. Accordingly, summary judgment is denied as to Ms. Conley's claim of bad faith.

**D.     The Court Declines to Consider Summary Judgment in Favor of Ms. Conley on its Own Motion**

Finally, the Court addresses one subject briefly mentioned by Ms. Conley. In her response to State Farm's motion for summary judgment, Ms. Conley argues that "evidence designated by State [Farm] indicates that Conley is entitled to partial summary judgment on the issue of whether she is entitled to UIM coverage." [DE 36 at 1.] Ms. Conley did not file a cross-motion for summary judgment, but instead invites the Court to grant partial summary judgment on its own motion, under Rule 56(f)(1). [*Id.* at 11, 21.] That rule allows the Court to consider whether summary judgment is proper even though no motion has been made, but entitles the adverse party to notice and an opportunity to respond. *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 602–03 (7th Cir. 2015). Further, if the Court did consider granting summary judgment against State Farm, State Farm would be entitled to have the Court "grant [it] all of the favorable factual inferences that it has just given to" Ms. Conley. *Id.* at 603.

As discussed above, a number of material factual issues remain in genuine dispute regarding the circumstances under which Ms. Conley completed the application for her umbrella policy, most notably whether she is the person who placed the "x" in the box rejecting UIM coverage. Even if the Court were to take up the matter *sua sponte*, it would find that those same factual disputes which allowed Ms. Conley's claim to survive also preclude partial summary judgment against State Farm. Accordingly, the Court declines Ms. Conley's invitation to exercise its authority under Rule 56(f)(1).

## IV. Conclusion

For the reasons stated above, the Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**. [DE 26.] Ms. Conley is not entitled to claim UIM coverage under the umbrella policy by means of waiver or estoppel. However, factual issues remain regarding whether such coverage exists under the policy and whether State Farm acted in bad faith. The Court will contact the parties to schedule a status conference to set a trial date.

SO ORDERED.

ENTERED: March 31, 2015

/s/ JON E. DEGUILIO
Judge
United States District Court